# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 01-457-03 |
| v. | : | CIVIL ACTION NO. 09-CV-1559 |
| RICHARD POTTS | : | |

**DuBOIS, J.**                                                                January 27, 2010

## M E M O R A N D U M

### I. INTRODUCTION

A jury found Richard Potts guilty of murdering Rodney Trusty and of conspiring to distribute cocaine base ("crack"). Presently before the Court is Potts's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, in which Potts asserts an array of arguments directed at the competence of his trial counsel, the selection of his jury, and the evidence presented at his trial. For the reasons discussed below, the Court denies the motion.

### II. BACKGROUND

On August 1, 2002, a grand jury returned a Superseding Indictment charging Potts with conspiracy to distribute cocaine base ("crack") within 1,000 feet of a school, in violation of 21 U.S.C. § 846 (Count 1), and murder in furtherance of a continuing criminal enterprise and while engaged in a drug trafficking crime, in violation of 21 U.S.C. § 848(e)(1)(A) (Count 7). He was convicted on both counts by a jury on March 27, 2003, and, on July 16, 2003, was sentenced to concurrent terms of life imprisonment on each count.

Potts appealed his conviction. The Third Circuit affirmed the verdict, but vacated the

sentence and remanded the case to the District Court by Order dated July 7, 2005. On remand, the District Court resentenced Potts to life imprisonment, a 20-year term of supervised release, a $3,500 fine, and a $200 special assessment.

Potts appealed this new sentence. The Third Circuit affirmed in a September 26, 2007 Order. Thereafter, Potts moved the Third Circuit for rehearing *en banc*. That motion was denied on January 7, 2008.

On April 3, 2009, Potts mailed his Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody from prison to the Clerk of Court. ("April 3 Habeas Motion"). Because an inmate's § 2255 motion is deemed to be filed when it is mailed from prison, the motion is deemed filed on April 3, 2009. See Houston v. Lack, 487 U.S. 266, 271 (1988).

The April 3 Habeas Motion contains eleven separate grounds for relief, nine of which assert the various ways in which Pott's counsel was constitutionally ineffective:

1. Ground One – Ineffective Assistance of Counsel for Failure to Challenge the District Court's Ineffective Voir Dire of Juror Number 373;

2. Ground Two – Ineffective Assistance of Counsel for Failure to Peremptorily Strike Juror Number 373;

3. Ground Three – Ineffective Assistance of Counsel for Failure to Challenge an Ambiguous Jury Instruction;

4. Ground Four – Ineffective Assistance of Counsel for Failure to Challenge the Admission of Witness Wakee Wright's Testimony;

5. Ground Five – Ineffective Assistance of Counsel for Failure to Call Maurice Lewis as a Witness;

6. Ground Six – Ineffective Assistance of Counsel for Failure to Challenge Potts's

Sentence for Possession of "Crack" Cocaine, When Potts Stipulated Only to Possession of "Cocaine Base";

7. Ground Seven – Ineffective Assistance of Counsel for Failure to Challenge a Two-Point Sentencing Enhancement for Possessing a Firearm During a Drug Conspiracy;

8. Ground Eight – Ineffective Assistance of Counsel for Failure to Challenge the District Court's Jurisdiction to Hear the Charge in Count Seven of the Superseding Indictment; and

9. Ground Nine – Ineffective Assistance of Counsel for Failure to Challenge the Discriminatory Use of Peremptory Challenges to Strike Jurors Number 1 and 230.

Ground Ten seeks relief on the basis of "newly discovered evidence" in the form of a newspaper article describing flaws in bullet lead analysis;[1] Ground Eleven asserts that Potts's prosecutor introduced false testimony to his grand jury.

On April 27, 2009, this Court ordered Potts to re-file his motion using the standard form required for motions brought pursuant to 28 U.S.C. § 2255. Potts complied with this order by re-filing the motion, using this Court's standard form, on June 1, 2009 ("June 1 Habeas Motion").[2] The June 1 Habeas Motion assigns different numbers to each of Potts's grounds for relief. For purposes of clarification, this Court will refer to the numbers used in the April 3 Habeas Motion.

---

[1] Potts filed a Motion to Supplement Movant's Exhibits 1 on August 19, 2009. The Court considers the exhibits attached to the motion and grants the motion.

[2] The June 1 Habeas Motion consists of two separate documents. The first, Document Number 649, is this Court's form § 2255 motion entitled "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody; the second, Document Number 651, is entitled "Movant's Supplemental Brief in Support of His Motion Filed Pursuant to 28 U.S.C. § 2255." Document Number 649 contains no certification of service testifying to the date it was mailed. It was received in the Clerk's office on June 1, 2009. Document Number 651 contains a signed certificate of service testifying that it was placed in the mail on June 1, 2009.

The June 1 Habeas Motion dropped Grounds One, Two, Four, and Eleven. The Court will treat these grounds as withdrawn. (Pet'r's Reply to Government's Resp. to Section 2255 Motion 1, 4, 12.) The June 1 Habeas Motion also added two grounds, which will be referred to as Grounds Twelve and Thirteen, respectively. Ground Twelve asserts that Potts's counsel was constitutionally ineffective for failing to object to a four-level sentencing enhancement imposed because of Potts's leadership role in the conspiracy for which he was convicted. Ground Thirteen claims that Potts's petit jury was empaneled after a constitutionally deficient voir dire.

## III. DISCUSSION

### A. Procedural Questions Related to the April 3 and June 1 Habeas Motions

As a threshold matter, the Court concludes that Potts's April 3 Habeas Motion is timely. 28 U.S.C. § 2255(f) gives inmates seeking habeas relief one year to file a § 2255 motion, beginning on "the date on which the judgment of conviction becomes final." After the Third Circuit denied his motion for rehearing *en banc*, Potts had ninety days in which to file a petition for a Writ of Certiorari with the United States Supreme Court. Sup. Ct. R. 13(1), (3). At the expiration of this ninety days – on April 6, 2008 – Potts's judgment became final. Because he is deemed to have filed the April 3 Habeas Motion on the date he mailed it from the prison – on April 3, 2009 – the motion is timely.[3]

### B. Ineffective Assistance of Counsel Grounds

#### 1. Legal Standard

"Strickland v. Washington supplies the standard for addressing a claim of ineffective

---

[3] The government argues that Grounds Twelve and Thirteen are procedurally barred because they were presented in the June 1 Habeas Motion but not in the April 13 motion. Because the Court concludes that these grounds are without merit, it is unnecessary to reach this issue. Cf. Mitchell v. Grace, 287 F. App'x 233, 233 (3d Cir. 2008) (affirming dismissal of habeas petition on the merits despite being presented with the issue of whether the petitioner's claims were procedurally barred).

-4-

assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. 668, 687 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This standard requires a familiar two-part inquiry. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." Id. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

## 2. Ground Three: Failure to Challenge Jury Instruction

Potts claims that his counsel was ineffective for failing to object to the District Court's instruction to the jury regarding Count Seven – an instruction he contends constructively amended the Superseding Indictment.[4] Count Seven of the Superseding Indictment[5] charged Potts with

---

[4] The following instruction was read to the jury:

Count – the next count, which is found at page 17, charges against Richard Potts only. The first paragraph there is to be disregarded, except that the government has to prove, with respect to count seven, that Richard Potts was a knowing conspirator in the conspiracy charged in count one. And it's alleged that he did certain things related to the killing of Rodney Trusty as part of the conspiracy charged in count one, that is, in furtherance of some object of the conspiracy charged in count one.
    Paragraph two of count seven reads that from – that on or about November 28, 1996, in Philadelphia, Richard Potts, while engaged in a drug trafficking crime offense, that is, conspiracy to distribute more than 50 grams of crack as charged in count one of the indictment, intentionally killed, and counseled commanded, induced,

murder in furtherance of a criminal enterprise *and* while engaged in a drug trafficking offense in violation of 21 U.S.C. 848(e)(1)(A). Potts contends that the jury instruction amended the Superseding Indictment by substituting for the conjunctive "and," the disjunctive "or." The effect, he argues, was to lead the jury to conclude they could convict him for murder either "in furtherance" *or* "while engaged" in a conspiracy.

21 U.S.C. § 848(e)(1)(A) establishes criminal liability for "any person engaging in or working in furtherance of a continuing criminal enterprise, *or* any person engaging in an offense punishable under section 841(b)(1)(A) . . . ." 21 U.S.C. § 848(e)(1)(A)(emphasis added). "It is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment. . . . Moreover, guilt may be established by proof of any one act

---

        procured and caused the intentional killing of Rodney Trusty, also known as Hot Rod, and such killing resulted.
            Now it is claimed in count seven that Richard Potts did the killing himself, or he aided and abetted the killing of Rodney Trust in furtherance of the conspiracy as charged in count one. That's the essence of Title 18, United States Code, Section 2, which is the aiding and abetting statute. The aiding and abetting statute says essentially that if you knowingly help somebody commit a crime, you are as guilty as the person who carried out the crime.

(Transcript of Trial Proceedings Before the Honorable James T. Giles, <u>United States v. Waters et al.</u>, CR - 01 - 457-2/3/11, 12 -13, March 26, 2003.) (hereinafter "Trial Tr.").

[5] Count Seven read:

[w]hile engaged in and working in furtherance of a continuing criminal enterprise, as charged in Count Six of this indictment, *and* while engaged in a drug trafficking crime offense, that is, conspiracy to distribute more than fifty (50) grams of cocaine base ("crack"), as charged in Count One of this indictment, intentionally killed, and counseled, commanded, induced or procured and caused the intentional killing of Rodney Trusty, a/k/a "Hot Rod," and such killing resulted.

(Sup. Indictment 17) (emphasis added).

named disjunctively in the statute." United States v. Neiderberger, 580 F.2d 63, 68 (3d Cir. 1978) (internal citations omitted); see also Griffin v. United States, 502 U.S. 46, 56 (1991) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands even if the evidence is sufficient with respect to any one of the acts charged.") (internal quotation marks omitted) (brackets in original).

There was no error in the District Court's instruction. Despite pleading the crime in the conjunctive in the Superseding Indictment, the government was only required to prove at trial either that Potts "engag[ed] in or work[ed] in furtherance of a continuing criminal enterprise" or that he "engag[ed] in an offense punishable under section 841(b)(1)(A)." 21 U.S.C. § 848(e)(1)(A). The government did not have to prove both ways of violating the statute and the jury instruction made this clear. Because there was no error, the failure of Potts's counsel to object to the jury instruction was not unreasonable. Ground Three of Potts's motion is rejected.

### 3. Ground Five: Failure to Call or Interview Maurice Lewis

Potts's fifth ground for relief is the alleged ineffectiveness of his counsel as demonstrated by that counsel's failure to either interview Maurice Lewis or call him to testify at trial. In an affidavit included in the June 1 Habeas Motion, Lewis states that "sometime in late 2002 and early 2003," Daniel Coach told Lewis that Coach "planned to lie and do whatever he had to do to get a good deal from the government by testifying against Richard Potts." (Aff. of Maurice Lewis 1.) A brief review of the comprehensive and detailed evidence presented at Potts's trial leads the Court to reject this ground for relief.

One of the key witnesses at Potts's trial was Daniel Coach. In his testimony, Coach described a conversation in which he discussed with Potts allegations that the murder victim, Rodney Trusty, had robbed the house where Coach based his drug operation. (Trial Tr. 84, March 14, 2003)

-7-

(Testimony of Daniel Coach.) Thereafter, Coach called Trusty to meet on 8th and Wingohocking, claiming that he, Andre Coach and Potts had girls with them. (Id. at 86, 87.) The purpose of the meeting was to kill Trusty. (Id. at 86.) Upon arrival at the pre-arranged meeting place, Coach and Potts began searching for Trusty. (Id. at 90.) Trusty eventually appeared in a car, but, spooked by Coach, he ran away on foot. (Id. at 93.) In armed pursuit, Coach and Potts shot and killed Trusty. (Id. at 96.)

Daniel Coach's detailed testimony was supported by two other witnesses: Keith Williams and Andre Coach. Williams told the jury that he reported to Potts that Trusty robbed the drug house. (Trial Tr. 42, March 6, 2003) (Testimony of Keith Williams.) He then confirmed some of the key events that took place on the day of Trusty's murder: he saw Daniel Coach and Richard Potts obtain guns after speaking with Trusty, (id. at 45-48), and he saw Potts leave with Daniel and Andre Coach, (id. at 48). He then explained to the jury that, after the murder, Potts gave him a .38 special revolver and told him "not to get caught with it." (Id. at 61.) Williams said that the .38 given to him by Potts was the same one he saw Potts take with him the day of the murder. (Id.) Although he could not make a definitive match, a ballistics expert testified at trial that bullet fragments at the scene had grooves consistent with a .38 special revolver. (Trial Tr. 103, 104, 115, 116, March 12, 2003) (Testimony of Ernest Bottomer.)

Andre Coach filled in the gaps in Williams's testimony. He testified that he drove Daniel Coach and Potts to 8th and Wingohocking on the day of the murder. (Trial Tr. 18-19, March 18, 2003) (Testimony of Andre Coach.) There, he saw an individual he could not identify pass by the car. (Id. at 21.) After the individual passed, Daniel Coach and Potts got out of the car and chased after him. (Id. at 22.) Three minutes later, Andre Coach heard multiple gunshots. (Id. at 23-24.)

Potts argues that Lewis would have told the jury that Coach's testimony was tainted by

Coach's desire to get a good deal from the government. The problem with this argument is that Potts's counsel was able to elicit evidence of this bias from Coach at trial. Potts's counsel impeached Daniel Coach's testimony by asking Coach questions regarding an agreement with the government in which Coach promised to testify against Potts in return for a motion from the government seeking a reduced sentence. (Trial Tr. 34-35, March 14, 2003) (Testimony of Daniel Coach.) Under these circumstances, Lewis's testimony would have been cumulative. Potts's jury was aware of Coach's potential bias.

In view of the overwhelming evidence against Potts, there is no need to address the first Strickland prong – whether the conduct of Potts's counsel was deficient. In order to succeed on his motion, Potts must demonstrate prejudice – a "probability sufficient to undermine confidence in the outcome of his trial" – under the second Strickland prong. Strickland, 466 U.S. 694. He has not done so. It is improbable that Lewis's cumulative impeachment testimony would have changed the outcome of the trial. Coach admitted to the jury at trial that the government had agreed to file a motion to reduce his sentence as a result of his cooperation. (Trial Tr. 34-35, March 14, 2003.) Despite this knowledge, the jury was convinced beyond a reasonable doubt that Potts murdered Trusty. The Court concludes that Potts was not prejudiced by Lewis's failure to testify.

### 4. Ground Eight: Failure to Object to District Court's Jurisdiction.

Ground Eight of the motion is equally meritless. Potts asserts that the District Court had no jurisdiction to hear the charge contained in Count Seven of the Superseding Indictment because the evidence did not demonstrate a sufficient nexus between Trusty's murder and the conspiracy to distribute cocaine base ("crack"). He argues that his counsel's failure to object on this ground makes him constitutionally ineffective. Once again, the Court disagrees.

As described above, the testimony of Daniel Coach, Andre Coach and Keith Williams gave

the jury sufficient grounds to conclude that Trusty was killed as part of a conspiracy to distribute drugs. Potts's counsel was not deficient for failing to object. Quite the opposite is true: given the evidence tying the murder to Potts's drug operation it would have been unreasonable for Potts's counsel to make a jurisdiction-based objection. Had it been made, it would have been overruled. The conduct of Potts's counsel in this regard was reasonable and did not prejudice his client. Ground Eight of Potts's §2255 motion is therefore denied.

### 5. Ground Six: Failure to Challenge sentencing for "crack" cocaine and failure to challenge references to "crack" during trial.

"Crack" and "cocaine base" are not synonyms. The term "cocaine base" refers to the chemical compound $C_{17}H_{21}NO_4$. "Crack" is just one of many forms of this compound: crack is a form of cocaine base but not all cocaine bases are crack. See United States v. Barbosa, 271 F.3d 438, 462 (3d Cir. 2001).

Potts stipulated that the substance he conspired to distribute was one containing cocaine base. He said nothing about "crack" in the stipulation. Seizing upon the difference between "cocaine base" and "crack," Potts argues that his counsel's failure to object to both the use of the term "crack" at trial and to a sentence based on crack made him ineffective. This argument is baseless.

Potts has already presented this argument twice, first on the direct appeal of his resentencing and second in a "Motion to Set Aside the Enhanced Penalty of 841(B)(1)(A)'s Crack Cocaine Form of Cocaine Base For Failure to Invoke The Court's Jurisdiction Pursuant to Federal Rules [sic] of Criminal Procedures Rule 12(b)(3)(b)" filed with this Court on March 25, 2008. Both times, the argument was rejected as "legally frivolous." United States v. Potts, No. 01-457 (E.D. Pa. Sept. 19, 2008); United States v. Potts, No. 05-4744, 2007 WL 2783349 (3d Cir. Sept. 26, 2007) (non-precedential). "It is well settled that an issue raised and litigated on direct appeal should not again

be challenged in a collateral attack." United States v. Harmon, No. 06-315-01, 2009 WL 3837406, at *2 (E.D. Pa. Nov. 13, 2009). Nevertheless, district courts may use their discretion to reconsider those arguments and the Court will do so here. See United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981).

The Third Circuit confronted the cocaine base / crack cocaine issue in Barbosa, where it held that "'cocaine base' encompasses all forms of cocaine base with the same chemical formula" for the purposes of construing 21 U.S.C. § 841(b)(1), but that "'cocaine base' means only crack when a sentence is imposed under the guidelines." 271 F.3d at 467. The use of the term "crack" during his trial did not result in prejudice because crack is a form of cocaine base. Nothing in Potts's stipulation prevented the government from further defining the substance as crack at trial. In fact, that is exactly what the government did through the expert testimony of FBI Special Agent Jesse Coleman. (Trial Tr. 40 - 78, March 17, 2003.) (Testimony of Jesse Coleman.) Coleman explained to the jury the chemistry necessary to transform powder cocaine into crack cocaine and then testified that the substance Potts conspired to distribute was crack cocaine. (Id. at 45-46, 48, 49,72.) Potts's stipulation that the substance was cocaine base, combined with Coleman's testimony, provided sufficient evidence for the jury to conclude, beyond a reasonable doubt, that Potts intended to distribute the crack form of cocaine base.

The sentencing guidelines provide a harsher sentence for distribution of crack cocaine than they do for powder cocaine. See Kimbrough v. United States, 552 U.S. 85 (2007). In order to obtain the harsher sentence under the guidelines, the government must establish, by a preponderance of the evidence, that the substance a defendant intended to distribute was, in fact, crack cocaine. See United States v. Dent, 149 F.3d 180, 189 (3d Cir. 1998). The sentencing judge so found. (Transcript of Re-Sentencing Hearing Before the Honorable James T. Giles United States Chief

District Judge, 11-12, October 20, 2005.)

There was no error in the government's use of the term "crack" or in its arguments, at trial and at sentencing, that Potts conspired to distribute the crack form of cocaine base. The conduct of Potts's counsel with respect to the cocaine base / crack cocaine issue was reasonable and Potts suffered no prejudice.

### 6. Grounds Seven and Twelve: Failure to Challenge Two-Level Enhancement Under 18 U.S.C. § 924(c) and Four-Level Enhancement for Leadership Role.

Potts claims that his counsel was ineffective for failing to object to two separate sentencing guideline enhancements: an enhancement for possession of a firearm during a drug trafficking offense and an enhancement for serving in a leadership role. Neither of these grounds establishes ineffective assistance of counsel.

The jury found that Potts committed murder. The base offense level for that crime was 43. U.S Sentencing Guidelines Manual § 2A1.1 (2005). His conviction for conspiracy to distribute cocaine base ("crack") within 1,000 feet of a school increased the offense level by two, for a total offense level of 45. U.S. Sentencing Guidelines Manual § 3D1.4 (2005). The guideline sentence for level 43, without considering any enhancements, was life in prison. Whether the enhancements were applied or not, Potts's guideline sentence was life imprisonment. An objection by Potts's counsel would not have placed Potts in a lower offense level: application of the enhancements did not change the guideline sentence imposed. Potts suffered no prejudice and therefore has no basis for a claim of ineffective assistance of counsel on this ground.

### C. Ground Ten: Newly Discovered Evidence of the Unreliability of Ballistics Testimony

Potts claims that new evidence casting doubt on the credibility of bullet lead analysis undermines his conviction. See John Solomon, <u>FBI's Forensic Test Full of Holes: Hundreds</u>

Convicted on a Now-discredited FBI Bullet Test are Still in Prison, Wash. Post, Nov. 18, 2007. It does no such thing. Bullet lead analysis – a chemical analysis of the lead in the bullets received in evidence – was not presented at Potts's trial. Instead, the government presented ballistics evidence in the form of expert testimony from Philadelphia Police Officer Ernest Bottomer. (Trial Tr. 88, March 12, 2003) (Testimony of Ernest Bottomer.) Bottomer described his training in ballistics, (id. at 88-90), and then told the jury that he analyzed 17 bullet cartridges, eight bullets – five of which were taken from the inside of Trusty's body – four bullet jackets and one bullet jacket fragment from the scene of the murder, (id. at 92, 99). As a result of his analysis, Bottomer concluded that one of the bullets taken from Trusty's body was fired by a .38 caliber revolver. (Id. at 103, 104, 115, 116.)

At no point during the trial did Bottomer – or any other witness – make a statement regarding the lead content of bullets received in evidence. Because bullet lead analysis was not used at Potts's trial, the news articles Potts submitted in his June 1 Habeas Motion and briefing papers are irrelevant.

### D. Ground Thirteen: Unconstitutional Voir Dire

Potts claims that the venire was tainted by the Court's failure to describe the charges against him in more detail. Specifically, he argues that the Court told a portion of the venire only that a person was shot, not that the person was shot and killed. Without this information, he asserts that potential jurors were unable to fully apprise the Court of their ability to impartially consider the evidence. The Court disagrees.

First, the fact that the Court informed part of the venire only that the case involved a shooting and not that the shooting was fatal is immaterial. Either way, members of the venire were aware that the case would involve a crime of violence.

Second, the Court's voir dire was sufficient to test the bias of potential jurors. Because the

parties anticipated a trial lasting approximately two and one half months, the Court ordered a very large venire with the intention of narrowing it down to those jurors who would be able to serve for that time without hardship or bias.  To begin the process, the Court emphasized to counsel before the voir dire that it would "excuse any juror who answers yes to a question which is essentially can you not be a fair and impartial juror."  (Trial Tr. 10, Jan. 27, 2003.)  The Court then informed the venire that the trial would take approximately two and one half months and would involve claims of drug activity, gun possession, and the shooting of a person.  (Id. at 14, 26, 45, 65.)  It excused jurors who stated that the length of the trial would impose an unreasonable burden, and that, as a result, they might disregard their oaths as jurors.

The remaining members of the venire were then asked by the Court whether they would be unable to render a fair and impartial verdict in view of the nature of the charges, the race of the defendants, or the location of the crime.  (Id. at 23, 41, 56, 74.)  The transcript shows that no member of the venire expressed any such inability.  (Id.)  At one point during voir dire, the judge asked to speak with a member of the venire – juror number 373 – who did not answer the above question and appeared to bo be thinking about it.  (Id. at 41.)  After a sidebar conference, the judge was satisfied that the prospective juror could be impartial and allowed him back into the venire.  (Id. at 42.)

Once the Court screened members of the venire it determined would suffer an unreasonable burden as a result of the length of the trial, or who stated in response to general questions that they could not be fair and impartial, it conducted a more extensive voir dire in which it thoroughly vetted the venire for potential bias regarding several matters:  issues with law enforcement, employment by the  United States, disputes with the United States, previous service on a grand or petit jury, previous experience as a witness, previous experience as a criminal complainant, relationships with the parties and their attorneys, whether opinions about guilt or innocence had already been formed,

and whether any member of the venire had ever lived in the area where the crime was committed. (Id. at 80). See also (Trial Tr., Jan. 28, 2003.)

Federal courts have a duty to zealously protect the constitutional right to be tried "by an impartial jury." U.S. Const. amend. VI. They fulfill this duty through the process of voir dire, which is "conducted under the supervision of the trial court and is left to its sound discretion." United States v. DePeri, 778 F.2d 963, 971-72 (3d Cir. 1985). Potts must rebut the presumption that the prospective jurors were impartial. See Irvin v. Dowd, 366 U.S. 717, 723 (1961). He has not done so. The Court told the venire that it would be called upon to decide a case involving a crime of violence. It then asked if members of the venire could render a fair and impartial verdict. No member of the venire allowed to remain answered that question in the negative. Nothing in Potts's motion "demonstrate[s] clearly that the jurors possessed such fixed opinions that they could not judge impartially the guilt of the defendants." Id. at 972 (internal quotation marks omitted). Accordingly, the Court finds no constitutional error with respect to the questions asked of the venire.

### E. Ground Nine: Batson Challenge

Finally, Potts claims that the government discriminated on the basis of race, in violation of the rule announced in Batson v. Kentucky, 476 U.S. 79 (1986), when it used its peremptory challenges to strike jurors number 1 and 230.

Batson held that the government violates the Constitution when it exercises its peremptory challenges solely on the basis of race. Id. at 89. To demonstrate a violation, the Supreme Court has laid out a three-step process. "First, the defendant must show that the challenged jurors were members of a cognizable racial or ethnic group. Then the defendant must show that the relevant facts and circumstances of the case raise an inference that the prosecution used its peremptory challenges to exclude members of the venire from the petit jury on account of their race . . . . If the defendant

-15-

makes out a prima facie case, the burden shifts to the prosecution to come forward with some neutral explanation for challenging black members of the venire." United States v. Casper, 956 F.2d 416, 418 (3d Cir. 1992). The Government's reasons must be clear and reasonably specific, but do not have to rise to the level of "for cause." Id.

There are two problems with Potts's Batson challenge. The first is that Potts failed to establish a prima facie case of discrimination. Potts's defense counsel thought that juror number 1 was Hispanic. (Trial Tr. 63) (January 28, 2003.) The judge disagreed. (Id.) The parties agreed that juror number 230 was African-American. (Id. at 64.) Strikes against those members of the venire, without more, does not establish a pattern of discrimination against one racial or ethnic group. See Brohnstein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005) (noting that "the absence of a pattern of strikes is a factor to be considered" in determining whether a prima facie case has been established), and there is no other evidence in the record that would support an inference of unconstitutional discrimination.

Assuming, *arguendo*, that Potts did present a prima facie case of discrimination, his second problem is that the prosecutor gave neutral explanations for the two peremptory challenges. When confronted with a Batson challenge to its strike of juror number one, the prosecutor stated that he did not know the juror was a member of a minority group. He explained that the juror was struck because the juror was a recovering addict who might unwittingly know individuals involved in the case. (Trial Tr. 63-64, Jan. 28, 2003.). With regard to juror number 230, the prosecutor told the judge that he was concerned about that juror's involvement in litigation against the city and the lack of information regarding his employment. (Id. at 64.) The judge responded by calling juror number 230 to sidebar for more extensive questioning. (Id. at 65).

The court's ruling on the Batson challenge is not on the transcript. Nevertheless, the

transcript clearly establishes a neutral justification for the prosecutor's peremptory challenges to jurors number 1 and 230. Potts has not established a Batson violation.

## IV. CERTIFICATE OF APPEALABILITY

In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights." Morris v. Horn, 187 F.3d 333, 340 (3d Cir.1999); see also 28 U.S.C. § 2253(c)(2) ( "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."). The Court concludes that petitioner has not made such a showing. Thus, the Court will not issue of certificate of appealability.

## V. CONCLUSION

For the above reasons, petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is denied. An appropriate order follows.